IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

LAURA LEWIS,

        Plaintiff,

vs.                                  No. 07cv1303 DJS

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,

        Defendant.

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Plaintiff's (Lewis's) Motion to Remand for a Hearing **[Doc. No. 25]**, filed June 4, 2008, and fully briefed on August 13, 2008. On June 15, 2006, the Commissioner of Social Security issued a final decision denying Lewis's claim for disability insurance benefits and supplemental security income payments. Lewis seeks judicial review of the Commissioner's final decision pursuant to 42 U.S.C. § 405(g). Having considered the arguments, pleadings, administrative record, relevant law, and being otherwise fully informed, the Court finds that the motion to reverse is well taken and will be **GRANTED**.

### I. Factual and Procedural Background

Lewis, now fifty-five years old (D.O.B. November 20, 1953), filed her application for disability insurance benefits and supplemental security income on February 12, 2003 (Tr. 21), alleging disability since July 25, 2001, due to a heart condition, severe scoliosis of the spine, a differentiated hip dislocation, leg length discrepancies, and knee problems (Tr. 109). Lewis has a

high school education and past relevant work as a receptionist, secretary, nurse's aide, housekeeper, and janitor (Tr. 118).  On June 15, 2006, the Commissioner's Administrative Law Judge (ALJ) denied benefits, finding Lewis "had the residual functional capacity for the full range of light work."  Tr. 37, 41.  The ALJ also found Lewis's allegations regarding her limitations were not credible.  Tr. 38.

Lewis filed a Request for Review of the decision by the Appeals Council.  On November 2, 2007, the Appeals Council denied Lewis's request for review of the ALJ's decision.  Tr. 13. Hence, the decision of the ALJ became the final decision of the Commissioner for judicial review purposes.  Lewis seeks judicial review of the Commissioner's final decision pursuant to 42 U.S.C. § 405(g).

## II.  Standard of Review

The standard of review in this Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether she applied correct legal standards. *Hamilton v. Secretary of Health and Human Servs.,* 961 F.2d 1495, 1497-98 (10th Cir. 1992). Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994).  "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion."  *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). Moreover, "all of the ALJ's required findings must be supported by substantial evidence," *Haddock v. Apfel,* 196 F.3d 1084, 1088 (10th Cir. 1999), and all of the relevant medical evidence of record must be considered in making those findings, *see Baker v. Bowen*, 886 F.2d 289, 291 (10th Cir. 1989).  "[I]n addition to discussing the evidence supporting his decision, the ALJ must

discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996). Therefore, while the Court does not reweigh the evidence or try the issues de novo, *see Sisco v. United States Dep't of Health & Human Servs.*, 10 F.3d 739, 741 (10th Cir. 1993), the Court must meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings, in order to determine if the substantiality test has been met. *See Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994).

### III.  Discussion

In order to qualify for disability insurance benefits or supplemental security income, a claimant must establish a severe physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity. *Thompson v. Sullivan*, 987 F.2d 1482, 1486 (10th Cir. 1993)(citing 42 U.S.C. §423(d)(1)(A)). The regulations of the Social Security Administration require the Commissioner to evaluate five factors in a specific sequence in analyzing disability applications. 20 C.F.R. § 404.1520 (a-f). The sequential evaluation process ends if, at any step, the Commissioner finds the claimant is not disabled. *Thompson*, 987 F.2d at 1487.

At the first four levels of the sequential evaluation process, the claimant must show she is not engaged in substantial gainful employment, she has an impairment or combination of impairments severe enough to limit her ability to do basic work activities, and her impairment meets or equals one of the presumptively disabling impairments listed in the regulations under 20 C.F.R. Part 404, Subpt. P, App. 1, or she is unable to perform work she had done in the past. 20 C.F.R. §§ 404.1520 and 416.920. At the fifth step of the evaluation, the burden of proof shifts to

the Commissioner to show the claimant is able to perform other substantial gainful activity considering her residual functional capacity, age, education, and prior work experience. *Id.*

In support of her motion to reverse and remand, Lewis makes the following arguments: (1) the ALJ's hypothetical to the vocational expert (VE) excluded the mental limitations described by Plaintiff's treating psychiatrist; (2) the ALJ's credibility determination is not supported by substantial evidence; (3) the ALJ was biased; (4) the missing August 19, 2004 transcript denied her due process; and (5) the ALJ failed to consider that she did not have the mental acumen to attend to her treatment and to maintain employment.

### A. Mental-Impairment Evidence

On October 21, 2004, Pamela Arenella, M.D., Lewis's treating psychiatrist, completed a form noting Lewis suffered from Affective Disorders and Anxiety Related Disorders. Tr. 420-427. Dr. Arenella also noted she had seen Lewis seven times. *See* Tr. 433-457 (mental health records for Dr. Arenella and therapist). Under Affective Disorders, Dr. Arenella noted Lewis had "Depressive syndrome characterized by" (1) anhedonia or pervasive loss of interest in almost all activities; (2) appetite disturbance with change in weight; (3) sleep disturbance; (4) decreased energy; (5) difficulty concentrating or thinking; (6) thoughts of suicide; (7) hallucinations, delusions or paranoid thinking; and (8) easy distractibility. Tr. 422.

Under Anxiety Related Disorders, Dr. Arenella noted Lewis had anxiety as the predominant disturbance "as evidenced" by generalized persistent anxiety accompanied by (1) autonomic, hyperactivity; (2) apprehensive expectation; (3) vigilance and scanning; and (4) recurrent and intrusive recollections of a traumatic experience which are a source of marked distress. Tr. 424.

Finally, Dr. Arenella opined Lewis was **moderately** restricted in her activities of daily living, **extremely** restricted in her ability to maintain social functioning, **markedly** limited in the area of concentration, persistence or pace resulting in failure to complete tasks in a timely manner (in a work setting or elsewhere); and **markedly** limited in the area of episodes of deterioration or decompensation in work or work-like settings. Tr. 427.

On October 26, 2005, Dr. Arenella also completed a Medical Source Statement of Ability To Do Work-Related Activities (Mental). Tr. 456. Under the category of "ability to understand, remember, and carry out instructions," Dr. Arenella opined Lewis was **markedly** limited or restricted in the following areas: (1) ability to understand and remember detailed instructions; (2) ability to carry out detailed instructions; and (3) ability to make judgments on simple work-related decisions. *Id*. Dr. Arenella also noted Lewis was **moderately** limited or restricted in the following areas: (1) ability to understand and remember short, simple instructions; and (2) ability to carry out short, simple instructions. Under this category, Dr. Arenella noted: "Pt. has impaired concentration and focus on (illegible). Sometimes makes impulsive judgments & reacts with extreme irritability with little provocation." *Id.*

Under the category of "ability to respond to supervision, co-workers, and work pressure in a work setting," Dr. Arenella opined Lewis was **markedly** limited or restricted in the following areas: (1) ability to interact appropriately with supervisor(s); (2) ability to interact appropriately with co-workers; (3) ability to respond appropriately to work pressure in a usual work setting; and (4) ability to respond appropriately to changes in a routine work setting. Tr. 457. Dr. Arenella also opined Lewis was **moderately** limited or restricted in the ability to interact appropriately with the public. Dr. Arenella noted: "As above, Pt's moods are labile & Pt is often

very irritable with minimal provocation esp[ecially] in close relationships or when under excessive stress." *Id.*

## B.  Treating Physician Opinion

An ALJ must determine whether to give a treating medical source's opinion "controlling weight," and, if not, to determine what deference the opinion is due using the factors set forth in the regulations. *Watkins v. Barnhart*, 350 F.3d 1297, 1300-01 (10th Cir.2003).  The ALJ's determination regarding the weight assigned to a treating physician's opinion "'must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" *Id*. at 1300 (quoting Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *5).  Additionally, an ALJ is required to give controlling weight to a treating physician's well-supported opinion, so long as it is not inconsistent with other substantial evidence in the record.  *Drapeau v. Massanari*, 255  F.3d 1211, 1213 (10th Cir.2001);  *see also* §§20 C.F.R.  404.1527(d)(2); 416.927(d)(2).  The regulations also provide that the agency generally will give more weight to medical opinions from treating sources than those from non-treating sources. *See* 20 C.F.R. § 404.1527(d)(2).   Notably, "findings of a nontreating physician based upon limited contact and examination are of suspect reliability." *Frey v. Bowen*, 816 F.2d 508, 515 (10th Cir. 1987). Finally, the opinions of specialists related to their area of specialty are entitled to more weight than that of a physician who is not a specialist in the area involved.  *See* 20 C.F.R. § 404.1527(d)(5).

"When an ALJ decides to disregard a medical report by a claimant's physician, he must set forth specific, legitimate reasons for his decision." *Drapeau*, 255 F.3d at 1213 (quotation omitted).  "In choosing to reject the treating physician's assessment, an ALJ may not make

speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and not due to his . . . own credibility judgments, speculation or lay opinion." *McGoffin v. Barnhart*, 288 F.3d 1248, 1252 (10th Cir. 2002) (quotations and italics omitted).

>In her decision, the ALJ noted, in relevant part:
>
>As discussed below, I have considered the treating psychiatrist's opinions in assessing Ms. Lewis' residual functional capacity for work related mental activities. However, I am unable to give the psychiatrist's opinions controlling weight in this evaluation. <u>The Medical Source Statement was prepared the day before the second hearing in this matter. Ms. Lewis has submitted treatment notes prepared by her psychiatrist five months earlier. (Ex. B24F). These noted do not reveal signs or findings sufficient to support the functional limitations described as "marked in the Medical Source Statement submitted in October 2005</u>. Moreover, the psychiatrist's statement is generally inconsistent with the other functional assessments in Ms. Lewis' case file. (Compare Exs. B22F and B25F).

Tr. 35 (emphasis added). Further in her decision, the ALJ also noted:

>In assessing Ms. Lewis' residual functional capacity, I have also given careful consideration to her mental condition and functional limitations. As noted, I find no evidence of limitations in mental function until after Ms. Lewis was referred for evaluation in early 2004. Prior to April 2004, I find no evidence or allegation to support a finding of significant mental limitations. Lacking evidence to support a finding of mental limitations, I requested that Ms. Lewis undergo psychological evaluation. She was interviewed and tested by a psychologist on October 2, 2004. The consultant found that Ms. Lewis had moderate limitations in her ability to carry out detailed instructions, interact appropriately with others, and respond appropriately to changes in a routine work setting. He found evidence to support a finding of marked limitation in her ability to respond appropriately to work pressures. (Ex. B22F at 4-5). I note that, at the time of this evaluation and the much more severe assessment provided by her psychiatrist two weeks later, Ms. Lewis had been off her medications for about two months. (See Ex. B23F at 1).

Tr. 39.

First, the fact that Dr. Arenella's Medical Source Statement was "prepared the day before the second hearing in this matter" is of no consequence. Second, the ALJ failed to show how Dr. Arenella's treatment notes, prepared five months earlier, did not support the Medical Source Statement. A review of Dr. Arenella's treatment notes reveals that on October 21, 2004, Dr.

Arenella noted Lewis was more depressed and anxious, was tearful and irritable, had poor concentration and difficulty sleeping, hearing voices had increased, and was isolating. Dr. Arenella assessed Lewis as MDD-R (Recurrent Moderate Depressive Disorder) <u>with psychotic features</u>. On December 6, 2004, Dr. Arenella noted Lewis was "more depressed," was having trouble sleeping, was irritable, experienced suicidal ideation intermittently and was directed to call crisis [center] or go to the emergency room. Tr. 443. Dr. Arnella assessed Lewis with MDD-R <u>severe with psychotic features</u> and PTSD (post-traumatic stress disorder). *Id.* (emphasis added). On April 18, 2005, Dr. Arenella's psychiatric treatment notes again indicate Lewis was depressed and anxious, was experiencing nightmares, flashbacks, hyperarousal, and hypervigilance. Dr. Arenella assessed Lewis as Mod[erate] to severe, PTSD, still very depressed. Recurrent Moderate Depressive Disorder, PTSD.

Thus, contrary to the ALJ's finding, **Dr. Arenella's treatment notes support her Medical Source Statement of disability**. An ALJ may not substitute [her] own opinion for medical opinion. *Sisco,* 10 F.3d at 744; *see also Miller v. Barnhart*, 43 Fed.Appx. 200, 2002 WL 1608452 (10th Cir. July 22, 2002).

**C. Hypothetical Question to VE**

At the October 27, 2005 administrative hearing, the ALJ presented the following hypothetical to the VE.

Q: Please consider an individual of the same age, education and vocational background as Ms. Lewis. Please further assume that she can lift and carry 20 pounds on an occasional basis, 10 pounds on a frequent basis, that she can stand and/or walk for six hours out of an eight-hour day, sit for six hours out of an eight-hour day, that she can push and pull with

>her upper and lower extremities in a manner consistent with the strength limitations previously stated, that she can reach, handle, finger and feel on a frequent basis, she can occasionally climb ropes, ladders and scaffolds, can frequently climb ramps, stairs, crouch, crawl, balance, stoop and kneel, she should avoid concentrated exposure to unprotected heights and hazardous moving machinery.  Furthermore, she can understand, remember and carry out simple to moderately complex instructions and tasks [in an] objective focused environment which requires no more than minimal collaboration with co-workers and supervisors, and no more than incident, infrequent and super[ficial] contact with the public.  Okay?  All right.  Is there any of Ms. Lewis's past work that such a person could perform?

Tr. 494-95.  "'Testimony elicited by hypothetical questions that do not relate with precision all of a claimant's impairments cannot constitute substantial evidence to support the [Commissioner's] decision.'"  *Hargis v. Sullivan*, 945 F.2d 1482, 1492 (10th Cir. 1991)(quoting *Ekeland v. Bowen,* 899 F.2d 719, 722 (8th Cir. 1990).  This hypothetical question does not accurately reflect the severity of Lewis's mental impairments and thus does cannot constitute substantial evidence to support the ALJ's decision.

### D.  Conclusion

Based on the foregoing, the Court finds that the ALJ failed to apply correct legal standards and her decision of nondisability is not supported by substantial evidence. This case has been pending for almost six year and has endured two administrative hearings.  The ALJ's decision cannot be upheld, and the record supports a finding of disability.  Accordingly, the Court will not remand the case for additional proceedings.  The agency "is not entitled to adjudicate a

case *ad infinitum* until it correctly applies the proper legal standard and gathers evidence to support its conclusion." *Sisco*, 10 F.3d at 746.  Accordingly, this case is remanded to the agency for a determination of benefits.

 

_____
**DON J. SVET**
**UNITED STATES MAGISTRATE JUDGE**